STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

11-1555

ASSOCIATED DESIGN GROUP, INC.
D/B/A TERRY GAUDET & ASSOCIATES

VERSUS

RICKEY ALBERT, ET AL.

**********
APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, DOCKET NO. 2005-628-1
HONORABLE THOMAS R. DUPLANTIER, DISTRICT JUDGE
**********

SYLVIA R. COOKS
JUDGE

**********

Court composed of Judges Sylvia R. Cooks, Marc T. Amy and Phyllis M. Keaty.

Amy, J., concurs in the result.                                    AFFIRMED.

Kenneth W. DeJean, T.A.
Law Offices of Kenneth W. DeJean
417 West University Avenue
Lafayette, LA  70506
(337) 235-5294
**ATTORNEY FOR PLAINTIFF/APPELLANT**
Associated Design Group, Inc.

Craig L. Kaster
Teresa D. Cop
Craig L. Kaster & Associates, LLC
P.O. Box 815
Zachary, LA  70791
(225) 658-5450
**ATTORNEY FOR DEFENDANTS/APPELLEES**
Rickey Albert, Et Al.

**Cooks, Judge.**

## FACTS AND PROCEDURAL HISTORY

Associated Design Group, Inc. d/b/a Terry Gaudet & Associates (ADG) filed suit on December 9, 2005 against Rickey Albert d/b/a The Albert Group (Albert). ADG alleged it entered into a written contract with Albert in 2002 for professional architectural services on a project in Colorado. It allegedly provided services valued at $11,731.25 for which it was not paid. Albert alleged that ADG did not perform any services for him, and further alleged, in his reconventional demand, that ADG overbilled for its services on the project resulting in a claim against it for $25,167.47. After service on Albert, ADG agreed to an informal extension of time in which to file an answer as the parties were attempting to amicably resolve the matter. The parties were unable to reach an amicable resolution. Albert filed an answer and reconventional demand on August 28, 2006 along with requests for discovery to ADG.

Neither party took any further action in the matter until February 11, 2008. On that date ADG filed a motion to set for trial. ADG attached a certificate of readiness to its motion certifying that "all issues have been joined, all depositions, interrogatories and other discovery have been completed, all exceptions and motions have been disposed of, and the parties have seriously discussed a settlement of the action, without avail, and that this case is ready for trial." This certification was not truthful as ADG had not responded to discovery propounded by Albert in 2006. The trial court set the matter for trial for July 14, 2008.

Less than two months later, on April 2, 2008, ADG filed an unopposed motion to continue the trial date "due to the fact that counsel for plaintiffs has prior professional commitments." The trial court signed an order continuing the trial without date.

No further action was taken in the matter for over three years by any party. On April 14, 2011, ADG filed its second motion to set the case for trial, again certifying the case was ready for trial and that all discovery had been completed. Once again, this representation was false. In fact, ADG did not respond to Albert's discovery until May 9, 2011, after Albert filed his motion to dismiss for failure to prosecute. Trial was set for September 26, 2011.

On April 20, 2011, counsel for Albert sent a letter to counsel for ADG acknowledging that he had received notice of the setting for trial, and informing opposing counsel that he had still not responded to discovery propounded in 2006 contrary to his representations to the court in his certificate of readiness. The letter further stated:

> Please contact me so we can have a telephone conference in an effort to amicably resolve your client's failure to respond to discovery. This request is being made pursuant to District Court Civil Rule 10.1. Please contact me within 5 days. Otherwise I will proceed with filing the rule to compel in order to obtain the discovery.

Having received no response from ADG, Albert sent another letter to ADG dated May 2, 2011 informing counsel for ADG that he did not need to submit responses to discovery "because the defendants intend to file a motion to dismiss for lack of prosecution." On that same date counsel for Albert also mailed a motion and order for dismissal for failure to prosecute to the clerk of court. The motion to dismiss for failure to prosecute was filed on May 9, 2011. Albert asserted the case was abandoned by operation of law pursuant to the provisions of La.Code Civ.P. art. 561 as no steps had been taken in the prosecution or defense of the matter for over three years.

After a hearing on the motion to dismiss, the trial court dismissed the suit for lack of prosecution at Plaintiff's cost. ADG appeals asserting the trial court erred as a matter of law in dismissing the suit as abandoned based on its finding that

2

letters sent by Albert after the case was abandoned did not constitute a waiver of Albert's right to claim abandonment.

## LAW AND DISCUSSION

Louisiana Code of Civil Procedure Article 561(A)(1) provides in pertinent part: "An action, except as provided in Subparagraph (2) of this Paragraph, is abandoned when the parties fail to take any step in its prosecution or defense in the trial court for a period of three years…." The Code further provides at La.Code Civ.P. art. 561(A)(3):

> This provision shall be operative without formal order, but, on ex parte motion of any party or other interested person by affidavit which provides that no step has been timely taken in the prosecution or defense of the action, the trial court shall enter a formal order of dismissal as of the date of its abandonment.

Since ADG filed suit in 2005, it has done little to pursue its claim against Albert except for setting the case for trial. On the first occasion when ADG set the case for trial it shortly thereafter filed a motion to continue the trial without date based on its counsel of record having conflicting "prior professional commitments." ADG remained idle for over three more years, taking no action to pursue the matter or in any manner moving the action forward. There is no indication in the record, nor does ADG claim, that it ever propounded any discovery in the matter. ADG did not answer Albert's discovery requests, which had been outstanding since 2006, until after the time for advancing the case expired. When ADG set the matter for trial the second time, the case was already abandoned by operation of law.

> The Louisiana Supreme Court has held that Article 561 is self-executing; it occurs automatically upon the passing of three years without either party taking a step, and it is effective without a court order. *Clark v. State Farm Mutual Automobile Ins. Co.*, 2000-3010(La.5/15/01), 785 So.2d 779, 784. It is unnecessary for a defendant to file a motion to dismiss with the court in order to make a plaintiff's abandonment of the case effective. *Washington v. City of*

3

*Baton Rouge,* 99-1987 (La.App. 1 Cir. 2/18/00), 752 So.2d 367, 369.

> Article 561 imposes three legal requirements: (1) a party must take some step toward the prosecution or defense of the lawsuit; (2) the step must be taken in the trial court and, with the exception of formal discovery, must appear on the record; and (3) the step must be taken within the legislatively-prescribed time period from the last step taken by either party. *James v. Formosa Plastics Corporation of Louisiana*, 2001-2056 (La.4/3/02), 813 So.2d 335, 338. A party takes a "step" when it takes formal action before the trial court intended to hasten the matter to judgment. *James*, 813 So.2d at 338.

*Compensation Specialties, L.L.C. v. New England Mut. Life Ins. Co.*, 08-1549, p. 5 (La.App. 1 Cir. 2/13/09), 6 So.3d 275, 279, *writ denied*, 09-575 (La.4/24/09), 7 So.3d 1200.

As previously mentioned, prior to filing his written motion and order for dismissal, Defendant Albert sent a letter to ADG's attorney reminding him that he had not responded to discovery despite his certification to the court in his motion to set for trial that all discovery was complete. Albert's attorney further informed ADG's counsel in the letter that he was requesting a Rule 10.1 telephone conference precedent to filing a motion to compel. ADG's attorney did not comply with the request. Albert did not file a motion to compel discovery. Instead, Albert filed a written motion and order to dismiss for failure to prosecute seeking a formal judgment of dismissal.

There is no argument that the case was abandoned by operation of law due to ADG's failure to pursue the matter before ADG filed its motion to set for trial. ADG seeks to avoid dismissal by asserting that Albert, by virtue of the letter sent to ADG's counsel after the time for abandonment had passed, but before Albert sought an order of dismissal, waived his right to seek abandonment. We reject that argument.

We are asked to consider the application of the jurisprudentially created concept of acknowledgment or waiver as applied by the Louisiana Supreme Court

4

in *Clark* and in its recent decision in *Louisiana Depart. of Transp. and Development v. Oilfield Heavy Haulers, L.L.C.*, 2011-912 (La.12/6/11), 79 So.3d 978. In *Heavy Haulers*, the court held that sending a letter to all parties in the suit scheduling a discovery conference in conformity with Louisiana District Court Rules, Rule 10.1 is a "step" in the prosecution of an action as it is "an essential component of a motion to compel." *Id.* at 10. The court found that Oilfield Heavy Haulers' action met all three criteria set forth in *Clark* noting that OHH's letter was sent before the three-year time period of inactivity lapsed. In the instant case, Albert did not send his letter to ADG until after the three-year time period lapsed. The question then is, whether this post-abandonment letter sent by Albert amounts to a waiver of his right to seek abandonment of the case.

In *Clark*, the Louisiana Supreme Court undertook an extensive analysis of the policy considerations which form the basis of our law on abandonment of actions.

> Abandonment is a device that the Legislature adopted " 'to put an end to the then prevailing practice of filing suit to interrupt prescription, and then letting the suit hang perpetually over the head of the defendant unless he himself should force the issue.' " *Sanders v. Luke*, 92 So.2d 156 (La.App. 1st Cir. 1957). Indeed, Louisiana abandonment jurisprudence is rich in cases, like this one, illustrating how the practice of withholding service facilitates a period of litigation inactivity. We take judicial notice of recent legislation enacted to deal more directly with the period of litigation inactivity created by the tactic of filing suit to interrupt the running of prescription, yet withholding service. [Footnote omitted]

> Abandonment functions to relieve courts and parties of lingering claims by giving effect to the logical inference that a legislatively designated extended period of litigation inactivity establishes the intent to abandon such claims. When the parties take no steps in the prosecution or defense of their claims during that legislatively ordained period, "the logical inference is that the party intends to abandon the claim and the law gives effect to this inference." *Young v. Laborde*, 576 So.2d 551, 552 (La. App. 4th Cir. 1991). The presumption of abandonment that arises under Article 561 as a result of three years of litigation inactivity, however, is not conclusive. As noted, two jurisprudential, prescription based

5

exceptions are recognized. Moreover, given that dismissal is the harshest of remedies, the general rule is that "any reasonable doubt [about abandonment] should be resolved in favor of allowing the prosecution of the claim and against dismissal for abandonment." *Id.*

Abandonment is not a punitive concept; rather, it [is] a balancing concept. Abandonment balances two equally sound, competing policy considerations: "on the one hand, the desire to see every litigant have his day in court, and not to lose same by some technical carelessness or unavoidable delay; on the other hand, the legislative purpose that suits, once filed, should not indefinitely linger, preserving stale claims from the normal extinguishing operation of prescription." *Sanders*, 92 So.2d at 159. The latter policy consideration parallels those served by prescriptive statutes-promoting legal finality, barring stale claims, and *preventing prejudice to defendants. Gary v. Camden Fire Insurance Co.*, 96-0055 (La.7/2/96), 676 So.2d 553. More precisely, the latter prescriptive periods on which abandonment is based promotes "the legislative intent and judicial policy of finality, requiring that suits not be permitted to linger indefinitely, that the legal process be expedited where possible, and that abandoned cases be removed from crowded dockets." 1 Judge Steven R. Plotkin, *West Practice Group: Louisiana Civil Procedure* 359 (2001). Given the balancing function served by abandonment, "Louisiana's jurisprudence tends to be inconsistent*; no bright lines exist.*" *Id.* (emphasis supplied).

*Clark*, 785 So.2d at 786-87(emphasis added). The court in *Clark* then examined the historical and theoretical bases of the concept of abandonment referring to it as "a species of prescription[.]" *Id.* at 791. In *Clark,* "the relevant prescriptive principle" was "acknowledgement." *Id.* at 792. Reasoning that an acknowledgment is " ' a simple admission of liability resulting in the interruption of prescription that has commenced to run, but not accrued, and may be made on an *informal basis*[,]'" the court in *Clark* concluded that an unconditional tender made by defendant to plaintiff constitutes "an acknowledgment and thus within the waiver exception." *Id.* at 792-93. The *Clark* court directs that:

In determining whether a waiver of the right to assert abandonment occurred, the jurisprudence has recognized the appropriateness of considering the qualitative effect of the defendant's conduct. Articulating this standard one court stated:

Whether the *step* or *steps* taken by a defendant . . . be termed as "affirmative" or as "definite" or "formal", it is the

6

> *qualitative effect* of the step(s) taken by a defendant which must be considered in a case to case approach to determine whether the defendant has waived the CCP Art. 561 abandonment.
>
> *Middleton*, 526 So.2d at 860-61.

*Id.* at 792.

The court in *Clark* reached its decision because the qualitative, or substantive effect of an unconditional tender serves to protect a defendant's interest in avoiding its exposure to penalties and attorney fees in the event it was determined at trial that coverage under the defendant insurer's policy existed. Applying the *Clark* analysis to the case at bar, we find that Albert's attorney's letter to Plaintiff's counsel indicating he made a misrepresentation to the court and requesting that he telephone him to discuss the matter as provided in the Rules of Court cannot be construed as an acknowledgment nor as an admission of liability. Thus, such action would not constitute a waiver of Albert's right to request a formal judgment of dismissal based on abandonment. Albert's attorney did not file a motion to compel discovery, which action would have constituted a post-abandonment waiver as it would have indicated Albert's willingness to have a judicial resolution and would be a "step" in the defense of the matter. Instead, he filed a motion and order of dismissal seeking a formal judgment dismissing the matter which the law already deemed abandoned. Moreover, given that the case was instituted almost seven years prior but Plaintiff did very little to pursue the matter, propounded no discovery, failed to respond to Defendant's discovery requests, and allowed three years to elapse without any intervening activity, we find Albert would be greatly prejudiced if this abandoned suit were allowed to be revived simply because Albert's attorney sent an informal letter, off the record, after the period of abandonment lapsed, requesting long overdue responses to

7

discovery. We understand the demands of practicing law and human inadvertence of a clerical worker may unfortunately result in a litigant's losing the right to proceed with a case; but it may also result in a defendant's losing his ability to respond to a claim made against him. He too has an equally compelling story to tell. During the pendency of this case, Albert was involved in a serious automobile accident and left totally disabled and unable to participate further in the matter. Such uncertainties of life exemplify the reasons why the law requires litigants to move forward in a timely fashion if they seriously intend to pursue a matter.

ADG has not lost its opportunity to have its day in court because of some "technical carelessness or unavoidable delay[.]" *Sanders*, 92 So.2d at 159. We find the competing policy consideration expressed in *Sanders* described as "the legislative purpose that suits, once filed, should not indefinitely linger, preserving stale claims from the normal extinguishing operation of prescription" weighs in favor of Albert under the facts of this case. *Id*. We therefore find no error of law, no manifest error, and no abuse of the trial court's discretion in granting the motion to dismiss Plaintiff's action.

**AFFIRMED.**